The last argued case on the calendar for today is number 2064, Liu versus Indium Corporation of America. Thank you. May it please the court. My name is Kevin Martin. I represent the Indium Corporation of America, the appellees in this case. This case primarily involves a claim of race discrimination in which the plaintiff Wei Ping Liu claims that he was terminated from his position as a research scientist because he is Asian. The Northern District of New York granted Indium's motion for summary judgment with the exception of plaintiff's retaliation claims under Title VII and 42 U.S. Code Section 1981. Following a four-day trial, a jury rejected plaintiff's claim and found that he had not proved that he was terminated from his position on the basis of his alleged complaints about race discrimination. On this appeal, the plaintiff challenges the decision granting summary judgment and seeks a new trial of his retaliation claims on the basis of the lower court's evidentiary rulings and jury instructions. Indium requests that this court affirm the lower court's rulings in all respects. Initially, we would point out that there are numerous trial court evidentiary rulings which have been called into question by the plaintiff in his reply brief and it is normally the rule in this court that arguments that are raised for the first time in the reply brief are not to be considered and that would be the plaintiff's reply brief point one where he discusses a number of verbal objections that were either sustained or not sustained that should not be considered. With respect to the jury instructions, there was significant discussion at the trial during the charge conference and the plaintiff, who now complains that the word, quote, legitimate, was not included in the instructions. The instructions were taken essentially from the PJI and the use of the word legitimate has not been required nor is there a case law that would support such a claim. Similarly, the plaintiff claims that the jury instructions misled the jury on the law with respect to having to prove both falsity and pretext and once again, during the charge conference, the jury charge on this matter was requested by the plaintiff and that the concept of having to prove falsity was something that the plaintiff requested, not something that the defendant wanted. The case, this court's decision in Henry v. Wyeth Pharmaceuticals, there is some discussion about how far the plaintiff has to go to prove a retaliation case and whether or not falsity is something that needs to be proved and there is language in that decision in which the concept of falsity would include incompleteness and incorrectness, not just that it's untrue. So that in this particular case, the circumstances were such that the plaintiff was eventually terminated. The sort of last straw came when he refused direction to move his office next to Hong Wen-Zhang who was his antagonist. With respect to the summary judgment case, the undisputed evidence must be sufficient for a reasonable trier of fact to find that race discrimination was the basis for termination. In this particular case, we were faced with the unusual argument by the plaintiff that the reason that so many Asian scientists are hired by Indium Corporation is that they are particularly compliant and we would ask that the court, as the court below did, reject such a basis for a claim. In this case, Plaintiff Liu is a Ph.D. metallurgist from China. He was hired in 2005 by Dr. Ning Cheng-Li who is a defendant in the case. Can I just ask you about one of the allegations that there's a no Chinese rule at the company. Were there any other languages that were banned from being used in the office? So that rule was Dr. Li's rule for the R&D department alone. And the R&D department had about 31 or 32 Chinese employees out of 40 who would tend to want to speak Chinese together within the office. And Dr. Li felt that it would exclude non-Chinese speakers and that was the reason that he wanted to have that rule. It wasn't that they could never speak Chinese. They could speak Chinese when they spoke. We have many customers in China and it wasn't prohibited completely. It was just that when the employees were in the context with other non-Chinese speaking employees of Indium, they were not to do that. He felt that it was rude. So Mr. Martin, the answer to the question is no, there were no other languages that were forbidden? That is correct. But I take it, were there any other languages that were widely spoken or spoken at all other than English and Chinese in that department? Is there any evidence of that? No. It was Chinese primarily. And just one last question. You say there were 30 or so Chinese employees. You mean citizens of the People's Republic of China or do you mean Chinese Americans? There were about 20 citizens of China who are employees of the company in Suzhou. But the people in the research and development department that we're talking about, that Mr. Liu was part of, are the people there Chinese nationals? Mostly naturalized or on their way to becoming naturalized U.S. citizens. Okay. Thank you. So they were actually educated in China, born in China, but they're naturalized U.S. citizens. Okay. Thank you. Okay. Thank you, counsel. I think is my time up? Yes. I went over. Thank you. Thank you. We'll take the case under advisement. And the other two cases on the calendar for today are on submission. So that concludes our arguments for today. I'll ask the courtroom deputy to adjourn. Thank you. Thank you.